NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID E. LEACH III, Regional Director of Region 22 Of the National Labor Relations Board, for and on behalf of the National Labor Relations Board;<br><br>Petitioner,<br><br>v.<br><br>OLIVA SUPERMARKETS LLC AND RL MARKETS LLC ALTER EGOS.,<br><br>Respondents. | Civil Action No. 15-3174 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Petitioner and Regional Director David E. Leach III of Region 22 of the National Labor Relations Board ("the Board")(Collectively "Petitioner")' petition for this Court to issue temporary injunctive relief against Respondents Oliva Supermarkets LLC ("Olivia") and RL Markets I LLC ("RL")(Collectively "Respondents") pursuant to 29 U.S.C. §160(j) ("Section 10(j)") of the National Labor Relations Act ("The Act"). (CM/ECF No. 1) The Court has considered the submissions made in support of and in opposition to Defendant's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Petitioner's application is **GRANTED**.

## I. BACKGROUND

On December 30, 2014, the Regional Director for Region 22, which encompasses Northern New Jersey, issued a complaint and notice of hearing, pursuant to Section 10(b) of the Act in which the Regional Director alleged that Respondents were alter egos and had violated 29 U.S.C. § 160(a)(1) and (5) of the Act by repudiating the collective-bargaining agreement and refusing to apply the terms of the collective-bargaining agreement to employees at Respondents' Whippany, New Jersey location.. An administrative hearing regarding the unfair labor practices alleged in the Complaint was held before a Board Administrative Law Judge ("ALJ") from March 17, 2015 through March 20, 2015. On April 21, 2015, the Board authorized the Petitioner to seek injunctive relief pursuant to Section 10(j) of the Act with regard to the allegations enumerated in the above mentioned complaint.

In this petition for injunctive relief, Petitioner seeks an Order requiring Respondents Olivia and RL to apply the terms and conditions of the existing collective-bargaining agreement between the United Food and Commercial Workers, Local 464A ("the Union") and Oliva to the bargaining-unit employees working in Farmtastic supermarket in Whippany, New Jersey and to bargain with the Union, upon the Union's request.

Respondents operated a Foodtown supermarket in Cedar Knolls, New Jersey ("Cedar Knolls store") from 2004 until the store closed on February 22, 2014. Tr. 1131, 1261. On May 9, 2014, RL opened a supermarket named Farmtastic in Whippany, New Jersey ("Whippany store"), less than three miles away from the Cedar Knolls store. 4 GC Ex. 7; Tr. 142, 279-280.

Victor Laracca ("Victor") owns a 99 percent interest in Oliva and his wife, Josephine Laracca ("Josephine"), owns a one percent interest. GC Ex. 15, GC000056. Roberto Laracca ("Roberto"), Victor's son, is listed on the Certificate of Formation, Operating Agreement and bank loans as the sole owner of RL. GC Ex. 15, GC000005, GC000025, GC000080. However,

While Roberto is listed as the owner of RL, the Whippany store is funded almost entirely by Victor and Josephine Laracca and the V&V and Oliva businesses. GC Ex. 28 and 30; Tr. 892-893, 904. Roberto admitted that he was not "involved in the financial part of this deal." Tr. 879.

## II. LEGAL STANDARD

### A. Section 10(j)

Section 10(j) authorizes United States District Courts to grant temporary injunctions pending the Board's resolution of unfair labor practice proceedings. Section 10(j) states in relevant part:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any district court of the United States within any district wherein the unfair labor practices in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

### B. District Court's Role

A District Court's role in these injunctive proceedings is limited to making two determinations: (1) whether there is "reasonable cause" to believe that unfair labor practices have been committed; and (2) whether the injunctive relief sought is "just and proper." *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1084 n.25 (3d Cir. 1984) (interim relief under Section 10(j) may be granted without showing irreparable harm or a likelihood of success on the merits, the ordinary requisites for an injunction). The burden faced by the Board in winning 10(j) relief is "relatively insubstantial." *Kobell* at 1084.

## III. DISCUSSION

### A. Reasonable Cause

In order to prevail, the Regional Director needs to show that the evidence proffered gives this Court reasonable cause to believe that an unfair labor practice had occurred. *Id.* The "reasonable cause" standard under section 10(j) bars the district court from behaving as if it had general jurisdiction over the nation's labor laws. This Court may not decide whether or not to issue relief based on its own belief as to whether an unfair labor practice has been committed. *See, e.g., Boire v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers,* 479 F.2d 778, 792 (5th Cir.1973); *Schauffler v. Local* 1291, 292 F.2d 182 (3d Cir.1961). The amount of evidence required by the "reasonable cause" determination is less than that required to prove a violation. *Kobell* at 1084.

The "reasonable cause" standard requires the District Court to find: (1) that the Regional Director's case depends upon a substantial, non-frivolous legal theory, implicit or explicit; and (2) that there is sufficient evidence, taking the facts favorably to the Board, to support that theory. *Id.*

### 1. Record of the Administrative Proceeding

In view of Petitioner's "relatively insubstantial burden of proof," it is not necessary for the Court to hold a full evidentiary hearing to enable it to conclude whether "reasonable cause" has been established. *See Gottfried v. Frankel,* 818 F.2d at 493-94; *San Francisco-Oakland Newspaper Guild v. Kennedy,* 412 F.2d 541, 546 (9th Cir. 1988). The weight of judicial authority holds that it is proper for a District Court to base its "reasonable cause" determination in Section 10(j) cases upon evidence presented in the form of affidavits, or the transcript of a Board hearing before an administrative law judge. *See, Aguayo v. Tomco Carburetor Company,* 853 F.2d 744 (9th Cir. 1988*); Squillacote v. Graphic Arts Intern'l Union,* 540 F.2d 853 (7th Cir. 1976).

Petitioner has filed a motion to try the reasonable cause portion of the Petition on the basis of the record of the unfair labor practice hearing. Petitioner argues that a determination of this Section 10(j) matter on the transcript of the testimony and exhibits adduced in the administrative proceeding will avoid the delay inherent in conducting a full evidentiary hearing, will avoid duplicative litigation, will facilitate a speedy decision, and will conserve the time and resources of the court and the parties. Respondent does not oppose this motion in its opposition brief. (*See* O'ppn Brief at 8). Therefore, the Court will make its "Reasonable Cause" based upon the transcript of the Board hearing before the administrative law judge.

### 2. Analysis

Petitioner argues that when taking the facts in the light most favorable to the Petitioner, it is clear that there is reasonable cause to believe that Respondents were alter egos and there is reasonable cause to believe that Respondents' actions constituted an unlawful repudiation of the collective-bargaining agreement with the Union and their bargaining obligations in violation of Section 8(a)(1) and (5) of the Act. Alter ego companies "involve a mere technical change in the structure of identity of the employing entity, frequently to avoid the effect of the labor laws, without any change in ownership and management." *Howard Johnson Co. v. Detroit Local Joint Executive Board, Hotel & Restaurant Employees*, 417 U.S. 249, 259 n.5 (1974). Although each case turns on its own facts, the Board finds alter ego status where the two enterprises have "substantially identical 'management, business purpose, operation, equipment, customers and supervision, as well as ownership.'" Trafford Distribution Center v. NLRB, 478 F.3d 172, 178 (3d Cir. 2007)(citing Crawford Door Sales Co., 226 NLRB 1144 (1976).

Petitioner argues that because the Whippany store was financed and secured by the Laracca family assets, because a single individual oversees the ongoing financial operations of

all three Laracca supermarkets, because the Whippany store hired most of the Cedar Knolls managers and supervisors and a substantial portion of the Cedar Knolls employees, because all of these employees perform substantially the same tasks they performed in Cedar Knolls, and because the Whippany store operates in the same township just three miles from the former Cedar Knolls location and uses substantially the same equipment, this case involves a "mere technical change in the structure or identity of the employing entity… without any substantial change in its ownership or management." *Howard Johnson Co. v. Detroit Local Joint Executive Board, Hotel & Restaurant Employees,* 417 U.S. at 259 n.5. (*See* ECF No. 4) Petitioner contends that while it is not necessary to show that the Respondent's intent in opening the Whippany store was to avoid the union contract, the evidence in this case supports this conclusion and weighs in favor of finding alter ego status.

Respondent opposes Petitioner's arguments by stating that not only did Petitioner fail to prove that RL is the alter ego of Oliva, but Respondents "in fact not only effectively negated the evidence presented by the Petitioner", but also presented substantial evidence to show that the the supermarkets in question are two separate entities.

Based on this "relative low" threshold, the Court finds that Petitioner has sufficiently demonstrated to the Court that: (1) Regional Director's case depends upon a substantial, non-frivolous legal theory, implicit or explicit; and (2) that there is sufficient evidence, taking the facts favorably to the Board, to support that theory. Without determining whether or not to issue relief based on its own belief as to whether an unfair labor practice has been committed; the Court holds that Petitioner's case depends upon a substantial non-frivolous theory, the alter ego theory. As discussed above, alter ego companies "involve a mere technical change in the structure of identity of the employing entity, frequently to avoid the effect of the labor laws,

without any change in ownership and management." *Howard Johnson Co. v. Detroit Local Joint*

Moreover, Petitioner has properly put forth different facts derived from the transcripts of the proceedings before the ALJ which point to their theory of Respondents store's having alter ego status. (*See* ECF No. 1-2, Petitioner's memorandum of Law at 7-21)(*See generally* ECF No. 4). Respondents attempt to rebut Petitioner's argument by stating that the funding of the Whippany store by Victor and Josephine Laracca was done in order to help their son Roberto start his own business is of little consequence. The Court is not required to make a determination as to whether alter ego status exists or not. Rather, the Court merely must determine whether or not a non-frivolous legal theory exists and whether that theory is supported by evidence, taken in a light most favorable to Petitioner. As stated above, in viewing the evidence in the record before the Court, Petitioner has sufficiently demonstrated to the Court that: (1) Regional Director's case depends upon a substantial, non-frivolous legal theory, implicit or explicit; and (2) that there is sufficient evidence, taking the facts favorably to the Board, to support that theory.

**B. Just and Proper**

A motion for temporary injunctive relief under Section 10(j) differs significantly from an ordinary motion for a preliminary injunction. Interim relief under Section 10(j) may be granted without showing irreparable harm or a likelihood of success on the merits. *Hirsch v. Dorsey Trailers Inc.*, 147 F.3d at 247. Injunctive relief is "just and proper" under Section 10(j) "when the nature of the alleged unfair labor practices are likely to jeopardize the integrity of the bargaining process and thereby make it impossible or not feasible to restore or preserve the status quo pending litigation." *Pascarell v. Vibra Screw, Inc.*, 904 F.2d at 878. "The critical determination" for the Court is "whether, absent an injunction, the Board's ability to facilitate peaceful management-labor negotiation will be impaired." *Id.* at 879. An injunction is

appropriate when a failure to grant interim relief likely would "prevent the Board, acting with reasonable expedition, from exercising its ultimate remedial powers." *Kobell*, 731 F.2d at 1091-92. The determination that the relief sought is "just and proper" requires a finding by the court that "it is in the public interest to grant the injunction, so as to effectuate the policies of the [Act] or to fulfill the remedial function of the Board." *Eisenberg v. Lenape Properties, Inc.*, 781 F.2d 999, 1003 (3d Cir. 1986) (citations omitted). The Court is tasked with weighing the potential harms of injunctive relief against the potential benefits. *Chester v. Grane Healthcare Co.*, 666 F.3d at 98. In so doing, various factors are evaluated, such as the chilling effect of an employer's action, the overall harm to the bargaining process, and the overall public interest in promoting the settlement of labor disputes through collective bargaining. *Chester*, 666 F.3d at 98; *Pascarell v. Vibra Screw, Inc.*, 904 F.2d at 876.

Petitioner argues that Respondents have undermined the public interest in promoting collective bargaining by rendering the employees' long-term choice of their collective-bargaining representative a nullity. Petitioner states that by refusing to apply the contract to the Whippany store employees and recognize and bargain with the Union, Respondents have made it clear to its employees that they control their terms and conditions of employment and that the Union is completely powerless in assisting them. Petitioner asserts that interim relief is necessary in order to assure these employees that their rights under Section 7 of the Act may be exercised. Petitioner contends that a final Board order would come too late to have any meaningful effect to the employees.

Respondent refutes Petitioner's arguments by citing case law for the proposition that when the alleged unfair labor practice is against "an established, 'small and intimate' bargaining unit, improper attempts by management to impair the collective-bargaining process will have

minimal 'chilling' effect because the employees will, most likely, be fully aware of their rights under the NLRA." *Moore-Duncan v. Horizon House Developmental Servs.*, 155 F. Supp. 2d 390, 393 (E.D. Pa. 2001), (*citing NLRB v. Vibra Screw, Inc.*, 904 F.2d 874, 879 (3d Cir. 1990)). Respondent also cites *Kobell v. Suburban Lines,* a case in which a successor employer refused to hire all 38 of the predecessor employer's employees, allegedly as a means of avoiding its obligation to bargain with the union. Although all 38 employees had been represented by the same union for 14 years, the Court denied the injunction, finding that such a cohesive and established bargaining unit could "swiftly and effectively reconstitute itself", and there was no real concern that the established members of the bargaining unit would be deterred from rejoining the union. *Suburban Lines,* 731 F.2d at 1079-82.

Respondent states that RL Market's potential bargaining unit consists of ten (10) employees, almost as little as a quarter as that in *Suburban Lines*. The alleged bargaining unit that came over from Cedar Knolls to Whippany was seven (7) employees and currently only six (6) of them are still employed. Thus, Respondent argues, by the Third Circuit's standards, Respondent's bargaining unit is small. Second, Respondent asserts that all employees of the bargaining unit work in Whippany and are not "scattered among" several locations. *See, Horizon House*, 155 F Supp.2d at 397 (finding no intimacy and granting the injunction because, while the unit size was small, the employees were scattered among several different locations).

Petitioners responds by arguing that the Third Circuit's "small and intimate" exception is not applicable in this case, because the bargaining unit is not intimate. Petitioner points to the fact that the unit at the Cedar Knolls location consisted of about 12 employees, and only 8 employees moved to the Whippany store. GC Ex. 15, GC000059. Then, after moving the operation to the Whippany store, the unit grew to about 26 employees. GC Ex. 24, GC001695-

GC001705. Therefore, Petitioner contends, nearly 70 percent of workers in the unit after the Respondents' repudiation of the Union contract were new employees whose terms and conditions of employment were determined, not through the process of collective bargaining but, by an employer who has exhibited significant anti-Union animus. Petitioners asserts that this growth in the unit is significant, because the new bargaining-unit members do not have any experience with the Union, and they therefore have no knowledge of their rights under the NLRA or the contract. Furthermore, Petitioner states that since the majority of the bargaining unit now consists of new employees, it does not have cohesiveness that is required in order to satisfy the small and intimate exception. Moreover, Petitioner distinguishes *Suburban Lines* by noting that the record here clearly establishes that since the unit expanded to include a large majority of new employees, the unit could not reconstitute itself, even if the four original unit employees who were not initially hired at the Whippany store returned to work.

The Court agrees with Petitioner and finds that "absent an injunction, the Board's ability to facilitate peaceful management-labor negotiation will be impaired." *Pascarell*, 904 F.2d at 879. First, the Court finds that that the "small and intimate" exception does not apply to Respondents because as Petitioner notes, the significant growth of nearly 70 percent of workers in the unit after the Respondents' repudiation of the Union contract, resulted in new employees whose terms and conditions of employment without the benefit of collective bargaining. These bargaining-unit members do not have any experience with the Union, and they therefore have no knowledge of their rights under the NLRA or the contract. Moreover, by refusing to apply the contract to the Whippany store employees and recognize and bargain with the Union, Respondents have effectively shown employees that they control their terms and conditions of employment and that the Union is incapable in assisting them. The Court finds that interim relief

is necessary in order to assure these employees that their rights under Section 7 of the Act may be exercised. Moreover, as Petitioner points out, Respondents point to no evidence, other than conclusory statements about financial burdens, that requiring Respondents to apply the contract to the bargaining-unit employees at the Whippany store will be overly burdensome. *See Eisenberg v. Suburban Transit Corp.*, 112 LRRM 2708, 2712-2713 (D. N.J. 1983)(ordering rescission of unlawful mid-contract unilateral changes even though order would cost respondent more than if it were allowed to continue its illegal actions pending the Board's final order; court "unimpressed" with respondent's claimed harm), *aff'd per curiam*, 720 F.2d 661 (3d Cir. 1983). Finally, the recommendation to seek injunctive relief was filed within a reasonable period of time given Respondents' resistance to document production and the volume of documents to be reviewed. *See e.g., Pascarell v. Vibra Screw, Inc.*, 904 F.2d at 881 (the Board needs time to do a thorough investigation especially where the Respondent has engaged in a pattern of unlawful activity). Therefore, the Court finds that Injunctive relief is "just and proper" under Section 10(j) because "the nature of the alleged unfair labor practices are likely to jeopardize the integrity of the bargaining process and thereby make it impossible or not feasible to restore or preserve the status quo pending litigation." *Id.* at 878.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Petitioner's motion to try reasonable cause portion of temporary injunction using administrative record. (ECF No. 3). Additionally, the Court **GRANTS** Petitioner's application for a preliminary injunction based on the fact that the evidence establishes that there is reasonable cause to believe that Respondents are alter egos, that Respondents violated Section 8(a)(1) and (5) of the Act as alleged in the Petition, and that injunctive relief is just and proper.

An appropriate Order accompanies this Opinion.

Date: July 15, 2015

Jose L. Linares
United States District Judge